## 57435. PRICE v. THE STATE.

WEBB, Presiding Judge.
Harriet Price was indicted and tried for murder, found guilty of voluntary manslaughter for shooting her husband to death, and sentenced to serve fifteen years, twelve in prison and three on parole. On appeal we conclude that two of her enumerated errors are meritorious, and consequently must reverse and remand for a new trial.

1. During the entire trial the victim's mother Mrs. Lane repeatedly disrupted the courtroom proceedings with emotional outbursts and other interruptions. When

the first outburst occurred the trial judge directed that Mrs. Lane be removed from the courtroom and the trial continued without objection from defense counsel. Shortly thereafter, although she was never given permission to reenter the courtroom, Mrs. Lane again broke into a witness' testimony with an emotional remark about the defendant. Defense counsel objected and moved for a mistrial. The trial judge denied the motion, stating: " . . . but, Mrs. Lane, the Court's going to instruct you at this time if I, uh, . . . I'm going to allow you to remain in this Courtroom so long as you're able to control yourself. But now if you have one more outburst in the case, it . . . it puts the case in jeopardy, the Court might have to declare a mistrial. And it cost the County a lot of money to have to try this case over.

"Mrs. Lane: Why can't I cry for my child? Oh, why? (Crying) The court: Well . . . well . . . Mrs. Lane: Yes, sir, I understand. The court: Well, control yourself and control your emotions in the Courtroom and . . . Mrs. Lane: I understand. The court: . . . and if you feel you have to cry then you get up and leave the Courtroom and go outside to do your crying. Mrs. Lane: Well, I . . . I'll try. I . . . I can do it. Give me just a minute. The court: Okay, all right. [Defendant's attorney]: Your Honor, since you've overruled our motion for mistrial at this time, we'd ask you to exclude Mrs. Lane from the Courtroom. The court: Right. All right, well, we'll deny that motion . . . [Defendant's attorney]: Uh, Mrs. Lane was directly facing the jury and was crying at this time. We believe that would also have a prejudicial effect, uh, on the jury. The court: Well, the Court . . . the Courthouse arrangements [are] how they are and she's in the seating capacity of the Courtroom, so I'll overrule the objection. [Defendant's attorney]: Let me have the record reflect that the Courtroom as far as the seats go is divided into two halves with half the seats . . . facing in the back of the jury and the jury cannot see them. I wonder if Your Honor would order her to move to the other side of the Courtroom. I would like at this time to ask you to move . . . ask . . . order her to move to the other side of the Courtroom so that the jury cannot see her. The court: I . . . well, I'll deny the motion. All right, bring . . . bring the jury back."

As the trial continued Mrs. Lane remained sitting directly across from the jury, sobbing. Defense counsel again moved for mistrial, and the motion was again denied. Subsequently during testimony that six cartridges had been fired from the weapon which killed her son, Mrs. Lane cried out "Oh, my Lord," and the following colloquy occurred:

"The Court: Take her outside. Mrs. Lane: Jesus, please take me on home. You have to take me home? I have to go to heaven. I love Jesus. The court: Yes, sir. [Defendant's Attorney]: I have a motion I'd like to make outside the presence of the jury, Your Honor. The court: All right, take the jury out. [Jury retires.] The Court: All right, Mr. Clark. [Defendant's attorney]: I would like the record to reflect, Your Honor, we've now had the third emotional outburst from Mrs. Lane, who is the mother of the deceased. And we again renew our motion for mistrial."

This motion was denied and counsel for defense renewed the motion to exclude Mrs. Lane from the courtroom, which was granted. Nevertheless, Mrs. Lane after her removal remained standing just outside the glass door to the courtroom, trying to get back in, in full view of the jury. Defense counsel moved one more time for mistrial, arguing: "We feel we're virtually having to conduct our defense in the atmosphere of a funeral and that it is prejudicial to the Defendant's, uh, right to a fair trial under the . . . 14th Amendment of the Constitution of the United States and would again move for a mistrial." The court again denied the motion but agreed "to instruct the jury about sympathy and things. I'll give them that instruction in the charge. But I don't know . . . I don't know of no law that authorizes the Court to control emotions."

We think the facts here show much more harm and prejudice to the defendant than in *Walker v. State,* 132 Ga. App. 476 (208 SE2d 350) (1974), where this court held: "The conduct of the trial of any case is necessarily controlled by the trial judge, who is vested with a wide discretion, and in the exercise of which an appellate court should never interfere unless it is made to appear that wrong or oppression has resulted from its abuse. [Cit.] The presence of the bereaved mother at the prosecutor's table

during the trial of one accused of murdering her son surely must have had an impact on the jury and we cannot say it was not harmful and prejudicial to the defendant's right to have a fair trial. There was no showing by the state that her presence was necessary for an orderly presentation of the case. The trial judge abused his discretion and the judgment is reversed."

2. In addition we conclude that the trial court erred when at the beginning of the trial it instructed the jury as follows: "If I make an error then there is two Courts ahead of me in Atlanta, the State Court of Appeals and The State Supreme Court. If I make an error at law they are going to reverse this case and send it back. But if you make an error at fact, they will never be reversed, because that . . . there is no way that anybody can review these witnesses' testimony except you . . ." Defense counsel's objection and motion for mistrial were overruled.

"The Supreme Court has repeatedly held references should not be made to the reviewing courts by court or counsel except to cite their decisions. See in this connection, *Mitchell v. State,* 22 Ga. 211 (9), 233; *Bryant v. State,* 197 Ga. 641, 655 (30 SE2d 259); *Faust v. State,* 222 Ga. 27, 29 (148 SE2d 430).

"The jurors — as are all jurors — were presumed to be intelligent men, and they could not escape the conclusion that the trial court was telling them that after the trial had ended, *defendant and his counsel would be cast in the role of 'excepting'* to what had taken place during the trial — in other words, that they would lose the case and defendant would be convicted." *Floyd v. State,* 135 Ga. App. 217, 218 (2) (217 SE2d 452) (1975).

*Judgment reversed. Banke and Underwood, JJ., concur.*

SUBMITTED MARCH 6, 1979 — DECIDED
MARCH 16, 1979.

*Randall M. Clark,* for appellant.
*Dupont K. Cheney, District Attorney, Kenneth R. Carswell, Assistant District Attorney,* for appellee.